## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA EASTERN DIVISION

| | | |
|---|---|---|
| TRAVIS S. THOMAS, SR., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | CASE NO. CV-3:21-cv-192-SMD |
| | ) | |
| AUBURN UNIVERSITY, | ) | |
| | ) | |
| **Defendant.** | ) | |

### AUBURN UNIVERSITY'S MOTION TO DISMISS

Defendant Auburn University ("Auburn") hereby moves this Court to dismiss Plaintiff Travis S. Thomas, Sr.'s Complaint, (Doc. 1), as an impermissible "shotgun pleading" and for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 8(a)(2), 10(b), and 12(b)(6). In support of this Motion, Auburn shows the following:

### INTRODUCTION

Thomas's Complaint alleges five distinct causes of action against Auburn, but premises all five counts on the same set of factual allegations, violating Rules 8(a)(2) and 10(b) as an impermissible "shotgun pleading." Yet, even if Thomas had properly plead his claims, his Complaint nevertheless fails to state a claim upon which relief may be granted. Therefore, the Complaint is due to be dismissed pursuant to Rule 12(b)(6).

9825025.1

## THE COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING AND IS DUE TO BE DISMISSED PURSUANT TO RULES 8(a)(2) AND 10(b).

To satisfy Rule 8(a)(2), Thomas's Complaint must include "a short and plain statement of [his] claim showing that [he] is entitled to relief." Further, Rule 10(b) provides that Thomas must state his claims:

> in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

The Eleventh Circuit has explained:

> The purpose of these rules is self-evident, to require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.

*T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n. 14 (11th Cir. 1985).

Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are commonly referred to as "shotgun pleadings." *Id.*; *see also Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015) (holding that a "complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire

9825025.1

complaint" is a "shotgun pleading"). Shotgun pleadings "are flatly forbidden by the spirit, if not the letter, of these rules . . . [and the Eleventh Circuit] ha[s] 'little tolerance' for them." *Barmapov v. Amuial*, No. 19-12256, -- F.3d. --, 2021 WL 359632, at *2 (11th Cir. Feb. 3, 2021) (internal quotations and citations omitted).

Thomas's Complaint is a classic shotgun pleading. The Complaint alleges five counts against Auburn for: (1) race discrimination; (2) gender discrimination; (3) race-based hostile work environment; (4) gender-based hostile work environment; and (5) retaliation. But the Complaint fails to allege any specific facts in support of each count. Rather, it commits the "mortal sin" of alleging each count upon the same common set of facts. *Weiland*, 792 F.3d at 1322; *see also Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1311 (11th Cir. 2007) (*en banc*) (Tjoflat, J., dissenting) (holding that the practice of incorporating each count's allegations into successive counts is the "cardinal sin of 'shotgun' pleading"); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) ("The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions.").

In Counts One through Four, Thomas "repeats, realleges and incorporates by reference paragraphs 1 through 40 above" in support of each cause of action. Doc. 1, ¶¶ 42, 45, 48, 50. Count Five does little more to help, realleging "the above-described paragraphs 9–39" in support of Thomas's retaliation claim. Doc. 1, ¶ 51.

Hence, Thomas's Complaint is "a perfect example of 'shotgun' pleading in that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *See Anderson v. Dist. Bd. of Trustees of Cent. Fl. Comm. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). Because the Complaint fails to provide Auburn "adequate notice of the claims against [it] and the grounds upon which each claim rests," *Weiland*, 792 F.3d at 1323, it lacks "sufficient clarity to enable [Auburn] to frame a [responsive] pleading." *Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1018 n. 8 (11th Cir. 2001). The Complaint violates Rules 8(a)(2) and 10(b) by imposing upon Auburn (and the Court) the burden of identifying which factual allegations underlie each count—a task that requires significant guesswork because the Complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular [count]." *Weiland*, 792 F.3d at 1322. Therefore, Thomas's Complaint is due to be dismissed.

4

Normally, a plaintiff who files a shotgun pleading may be allowed a "second bite at the apple" and may re-plead his claims, but here such an opportunity would be useless, as Thomas's claims also violate Rule 12(b)(6).

## THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND IS DUE TO BE DISMISSED PURSUANT TO RULE 12(b)(6).

Under Rule 12(b)(6), if Thomas's Complaint "fails to state a claim [against Auburn] upon which relief may be granted," this Court "must dismiss it." *See Chapman v. U.S. Postal Serv.*, 442 F. App'x 480, 481–82 (11th Cir. 2011) (citing Fed. R. Civ. P. 12(b)(6)). In evaluating this Motion, this Court must "take the factual allegations in the complaint as true" and "construe them in the light most favorable to [Thomas]." *See Edwards v. Prime Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). This Court should not, however, "accept the labels and legal conclusions in the [Complaint] as true." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

Accordingly, this Court must first identify and set aside the allegations in Thomas's Complaint that are not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 680, and then determine whether Thomas's remaining allegations "possess enough heft to set forth a plausible entitlement to relief." *See Mack v. City of High Springs*, 486 F. App'x 3, 6 (11th Cir. 2012) (internal quotation and citation omitted).

Attached hereto as Exhibit A is copy of the Complaint in which Thomas's conclusory and speculative allegations are highlighted in yellow. As detailed below, Thomas's remaining allegations, although factual in nature,[1] lack the heft of a plausible entitlement to relief.

### Count One – Race Discrimination

To establish a prima facie case for disparate treatment in a race discrimination case under Title VII or § 1981, a plaintiff must allege that:

> (1) he is a member of a protected class;
> (2) he was qualified for the position;
> (3) he suffered an adverse employment action; and
> (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class.

*Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281 (11th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see also Burke–Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citing *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000)).[2]

---

[1] It goes without saying, but must be said, that Auburn disputes many of these allegations, but understands that this Motion to Dismiss is not the appropriate vehicle to challenge them.

[2] As already noted, Thomas also alleges discrimination claims under 42 U.S.C. § 1981. The same analysis applies to those claims. *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (Title VII and § 1981 have the "same requirements of proof and use the same analytical framework"). Therefore Auburn explicitly addresses Thomas's Title VII

Auburn does not dispute that Thomas has adequately alleged the first two elements. *See* Doc. 1, ¶¶ 6–8 (stating that Thomas is an African American male and describing his education and professional experience). However, Thomas has failed to adequately allege that he suffered less favorable treatment and ultimately an adverse employment action based on his race. Simply put, Thomas's factual allegations do not "possess enough heft to set forth 'a plausible entitlement to relief.'" *Mack*, 486 F. App'x at 6.

Although Thomas does not expressly delineate which allegations from his common set of facts support his race discrimination claim, Auburn infers (although it is not required to, *see Supra*, pp. 2–4) that the following allegations are relevant:

- Thomas "was consistently left out of meetings and conversations by the other three members of the [Academic Services] Leadership team, all white females." Doc. 1, ¶ 10.

- Dr. Flynn "directed very hurtful and stressful comments" at Thomas, such as that Thomas hadn't "been himself this semester" and that his "ability to recall information is not as good." Doc. 1, ¶ 13.

---

claims with the understanding that the analysis applies to the § 1981 claims as well.

9825025.1

- Dr. Flynn "appeared to berate" Thomas, stating "the grades for football are the worst they've ever been." Doc. 1, ¶ 14.

- Thomas's white female supervisors once "shook their heads" at Thomas. Doc. 1, ¶ 14.

- Thomas's white female supervisors made "sarcastic comments" to Thomas. Doc. 1, ¶ 14.

- Dr. Flynn and Thomas's white female supervisors "criticized" Thomas, stating that he needed to "work on his supervisory skills." Doc. 1, ¶ 15.

- Thomas felt "pressure" from his white female supervisors. Doc. 1, ¶ 20.

Title VII does not protect employees from unpleasant and rude conduct in the workplace. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1254 (11th Cir. 1999) (Edmondson, J., concurring); *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010) (recognizing the "bedrock principle" that "not all objectionable conduct or language amounts to discrimination under Title VII."). Indeed, the Courts of Appeals have uniformly observed that Title VII is not a "civility code."[3] Instead, Title VII

---

[3] *See Lee–Crespo v. Schering–Plough Del Caribe Inc.*, 354 F.3d 34, 37 (1st Cir. 2003); *Petrosino v. Bell Atlantic*, 385 F.3d 210, 223 (2d Cir. 2004); *Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 280 (3d Cir. 2001); *Ziskie v. Mineta*, 547 F.3d 220, 228 (4th Cir. 2008); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263–64 (5th Cir. 1999); *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 352 (6th Cir. 2005); *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009); *Anderson v. Family Dollar Stores of Ark., Inc.*, 579 F.3d 858, 862–63 (8th Cir. 2009); *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003); *Etsitty v.*

9825025.1

prohibits only discrimination on the basis of a protected characteristic. *See Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998).

As set forth above, Thomas alleges that he endured general workplace cattiness and obnoxiousness. He alleges that his coworkers excluded him from workplace conversations, criticized his supervisory skills, made sarcastic comments, and shook their heads at him.  At the very most, this conduct constitutes the type of "rude behavior that is generally accepted within the workplace." *Silverio v. Buffalo Rock Co.*, No. 2:09-CV-1914-TMP, 2011 WL 13286697, at *6 (N.D. Ala. Aug. 22, 2011). As such, it is not actionable under Title VII.

Moreover, and perhaps more importantly, nowhere in his Complaint does Thomas connect the above-described conduct *to his race*. For example, Thomas does not allege that his coworkers made any racially insensitive remarks or otherwise explain how he was treated unfairly *because* of his race. The only allegation that implicates race at all is the fact that Thomas is black, while his colleagues are white. These allegations are too meager to nudge Thomas's claim for *race-based* discrimination from conceivable to plausible. Rather, they are a variety of the "unadorned, the-defendant-unlawfully-

---

*Utah Transit Auth.*, 502 F.3d 1215, 1220–21 (10th Cir. 2007); *Davis v. Coastal Int'l. Sec., Inc.*, 275 F.3d 1119, 1123–24 (D.C. Cir. 2002).

9825025.1

harmed-me accusation" that the Supreme Court warned was inadequate in *Iqbal*, and are too bare-bones to allow the Court to be able to "reasonably infer [that Auburn] is liable for the misconduct alleged." *Waters Edge Living LLC v. RSUI Indemnity Co.*, 2009 U.S. App. Lexis 26426, *12 (11th Cir.).

In addition, Thomas alleges that:

- Some of his job responsibilities supervising the academic football staff were taken from him and given to his immediate supervisor, a white female. Doc. 1, ¶ 16.

- While both he and his white female colleagues knew about an alleged "suspicious grade change situation" involving an Auburn football player, none of the white females "were ever threatened about their knowledge," but Auburn's compliance officer told Thomas that because Auburn's rules require him to report "potential violations," he could be subject to termination for failure to do so. Doc. 1, ¶¶ 25–35.

- Ultimately, Auburn terminated his employment. Doc. 1, ¶ 39.

Unlike the allegations addressed above, these allegations ostensibly involve an adverse employment action. But, like those addressed above, Thomas never plausibly alleges that race was a factor in these actions, much less why Auburn is liable for any alleged discrimination. Thomas simply has not provided "enough factual matter (taken as true) to suggest intentional

9825025.1

race discrimination" by Auburn. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). Therefore, Count One is due to be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

<u>*Count Two – Gender Discrimination*</u>

The Court may make short shrift of Thomas's gender discrimination claim. Similar to race discrimination, to state a claim for gender discrimination under Title VII or § 1981, a plaintiff must allege:

> (1) he is a member of a protected class;
> (2) he was qualified for the position;
> (3) he suffered an adverse employment action; and
> (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class.

*Maynard*, 342 F.3d at 1281 (11th Cir. 2003) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802 (1973)).

Thomas predicates his gender discrimination on the same factual allegations addressed above. The only additional allegation that presumably supports Thomas's gender discrimination claim is that Thomas told "a senior associate athletic director, Dr. Kathryn Flynn, that she and the other two females [on the Leadership team] were 'over-reacting' to the grades of the football team[, and] Dr. Flynn replied that 'over-reacting' was 'not something [Thomas] should say to a supervisor who is also a woman.'" Doc. 1, ¶ 11.

9825025.1

Thomas's gender discrimination claim fails for the same reasons as his race discrimination claim: (1) the conduct he alleges amounts to nothing more than (at most) "rude behavior that is generally accepted within the workplace," *Silverio*, 2011 WL 13286697, at *6; and (2) Thomas utterly fails to plausibly allege that any of the conduct he complains of is connected *to his gender*. Again, the only factual allegation that implicates gender at all is the fact that Thomas is a male, while his colleagues are females.

Thomas's additional allegation certainly does not help nudge Thomas's claim for gender discrimination from conceivable to plausible. If anything, Thomas apparently offended Dr. Flynn by using language she perceived to entail gender-based connotations. Thomas's gender discrimination claim is supported with nothing more than "unadorned, the-defendant-unlawfully-harmed-me" allegations and therefore fails as a matter of law.

### *Count Three – Race-based Hostile Work Environment*

To state a hostile work environment claim, an employee must plausibly allege that his "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted); *see also Shields v. Fort James Corp.*,

305 F.3d 1280, 1282 (11th Cir. 2002) (noting that Title VII and § 1981 hostile

work environment claims have the same elements and are subject to the

same analytical framework). Specifically, to state a prima facie case, a

plaintiff must allege the following five elements:

> (1) that he is a member of a protected class;
> (2) that he was subjected to unwelcome racial harassment;
> (3) that the harassment was based on his race;
> (4) that the harassment was severe or pervasive enough to alter
> the terms and conditions of his employment and create a
> discriminatorily abusive working environment; and
> (5) that the employer is responsible for the environment under a
> theory of either vicarious or direct liability.

*Adams v. Austal, USA, LLC*, 754 F.3d 1240, 1248–49 (11th Cir. 2014).

Importantly, "only conduct that is *based on a protected category* . . . may be

considered in a hostile work environment analysis." *Jones v. UPS Ground

Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012) (emphasis added). "Innocuous

statement[s] or conduct, or [even] boorish ones that do not relate to the [sex

or gender] of the actor or the offended party, are not counted." *Id.*

As previously explained, Thomas's factual allegations regarding his

coworkers amount to nothing more than "rude behavior that is generally

accepted within the workplace." Silverio, 2011 WL 13286697, at *6. Thomas

fails to plausibly allege that his coworker's conduct—sarcastic comments,

shaking their heads, etc.—was *based on his race*.

Moreover, Thomas fails to allege whatsoever (and it is not plausible) that he suffered racial harassment that was severe or pervasive enough to alter the terms and conditions of his employment and create a discriminatorily abusive working environment. Even assuming that Thomas could plausibly allege that the complained of conduct was based on his race (he cannot), the conduct amounts to nothing more than "mere offensive utterance[s]," *Cockrell v. Greene Cty. Hosp. Bd.*, No. 7:17-CV-00333-LSC, 2018 WL 1627811, at *3 (N.D. Ala. Apr. 4, 2018), and is insufficient as a matter of law to support a hostile work environment claim. *See, e.g.*, *Guthrie v. Waffle House, Inc.*, 460 Fed.Appx. 803, 807 (11th Cir. 2012) (conduct of co-worker grabbing plaintiff's butt two to five times; "talk[ing] dirty" to her, saying that he would perform certain sexual acts on her, among other lewd comments, held to not reach severe level); *Leeth v. Tyson Foods, Inc.*, 449 Fed. Appx. 849, 853 (11th Cir. 2011) (finding conduct not sufficiently severe or pervasive where manager tried to pull plaintiff onto his lap, made comments that he wanted to "ram his tongue down her throat," dropped by her house uninvited, and called her on phone on numerous occasions and asked plaintiff to go out with him or meet him at hotel); *cf. Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 812 (11th Cir. 2010) (evidence presented that employer's offensive conduct occurred "every single day," and

consisted of various vulgar sexual conversations, many derogatory remarks directed towards women in particular, and the presence of pornography in the workplace was sufficient to meet the pervasiveness requirement and allowed claim to proceed to a jury).

In sum, even if unprofessional, the conduct and comments that Thomas alleges cannot plausibly constitute "intimidation and ridicule that was sufficiently severe or pervasive to alter [Thomas's] working conditions." *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012). As such, Thomas's race-based hostile work environment claim is due to be dismissed.

<u>*Count Four – Gender-based Hostile Work Environment*</u>

Similarly, to state a gender-based hostile work environment claim, a plaintiff must allege:

> (1) that he or she belongs to a protected group;
> (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature;
> (3) that the harassment must have been based on the sex of the employee;
> (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and
> (5) a basis for holding the employer liable.

*See Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (*en banc*).

Thomas's gender-based hostile work environment claim fails for the same reasons as his race-based claim: (1) Thomas has not plausibly alleged that the conduct he complains of was based on his sex; (2) Thomas has not alleged that he suffered severe or pervasive harassment; and (3) in any case, Thomas's allegations cannot plausibly support a claim for a discriminatorily abusive working environment. Therefore, Thomas's gender-based hostile work environment fails as a matter of law.

<em><u>Count Five – Retaliation</u></em>

Finally, to state a retaliation claim under Title VII, a plaintiff must allege that:

> (1) he engaged in statutorily protected activity;
> (2) he suffered a materially adverse action; and
> (3) there was a causal connection between the protected activity and the adverse action.

*Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010) (footnote omitted).

For purposes of this Motion, Auburn does not dispute that Thomas engaged in a statutorily protected activity—filing an EEOC complaint. See Doc. 1, ¶¶ 17, 19; *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1140 (11th Cir. 2020) (recognizing that filing an EEOC charge is a statutorily protected activity). Nor does Auburn dispute that Thomas suffered a materially adverse action—Auburn terminated his employment. Doc. 1, ¶ 39.

16

However, Thomas has failed to plausibly allege a "causal connection" between the protected activity and the adverse action. Indeed, Thomas alleges no facts whatsoever that could give rise to a plausible inference between the EEOC charges he filed and any subsequent adverse employment action he suffered.

First, Thomas does not allege that any of the persons responsible for disciplining or taking any other action against him that he considered adverse was aware of his EEOC charges. Thomas alleges that he informed Allen Greene, Auburn University's Athletic Director, and Maran White, Auburn University Counsel, of his EEOC charge. Doc. 1, ¶¶ 18, 19, 21. Thomas does not allege that either Greene or White were involved in any adverse action taken against him, including his June 30, 2020 performance review, his January 28, 2021 meeting with an Auburn compliance official, Rich McGlynn, or his March 1, 2021 termination. See Doc. 1, ¶¶ 21, 39. Nor does Thomas allege that Greene or White informed any other Auburn employee(s) of his EEOC charge.

Second, Thomas filed his charges on June 9, 2020 and July 6, 2020, and most of the potentially adverse actions Thomas claims to have suffered after occurred well beyond the three months the Eleventh Circuit has found

to be outside the bounds of close temporal proximity. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

Therefore, Thomas's Complaint lacks allegations of a temporal-based causal connection, and does not include factual allegations that would permit the inference of some other type of causal connection. Because the second amended complaint lacks factual allegations—temporal or otherwise— suggesting a causal relationship between Thomas filing his EEOC charges and any adverse employment action he suffered, or otherwise suggesting discriminatory retaliation, the Complaint fails to state a plausible retaliation claim. *See Thompson v. City of Miami Beach, Fla.*, 990 F. Supp. 2d 1335, 1342 (S.D. Fla. 2014) (holding plaintiff failed to state retaliation claim where more than three months elapsed between protected activity and adverse employment actions and plaintiff alleged no other causal link); *Uppal v. Hosp. Corp. of Am.*, 482 F. App'x 394, 397 (11th Cir. 2012) (holding plaintiff failed to state retaliation claim where she did not allege decision-makers responsible for adverse employment actions were aware of protected activity or allege any other causal connection between protected activity and adverse employment actions); *Thomas*, 506 F.3d at 1364 (holding plaintiff failed to present evidence from which reasonable jury could find causal connection between protected activity and adverse employment action that occurred

three months later). *Cf. McWhorter v. Nucor Steel Birmingham Inc.*, 304 F. Supp. 3d 1185, 1194 (N.D. Ala. 2018) (holding that "the close timing between Plaintiff voicing concerns to other Nucor employees about Nucor's hiring practices and Plaintiff's expedited termination supports an allegation that he was terminated in retaliation for contacting the EEOC.").

## CONCLUSION

For the foregoing reasons, this Court should dismiss with prejudice Thomas's Complaint.

Respectfully submitted this 31st day of March 2021.

*s/ Dorman Walker*
One of counsel for defendant
Auburn University

OF COUNSEL:
Dorman Walker dwalker@balch.com
Arial Alan aallan@balch.com
Balch & Bingham LLP
Post Office Box 78
Montgomery, AL  36101
Phone: 334-269-3138

9825025.1

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 31, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Julian Lenwood McPhillips, Jr.
MCPHILLIPS SHINBAUM, L.L.P.
516 South Perry Street
Montgomery, Alabama 36104
Phone: 334-263-2321
Email: julianmcphillips@icloud.com

Kyle David Sawyer
516 Perry Street; Suite 3-D
Montgomery, Alabama 36104
Phone: 334-356-4301
Email: kdsawyer64@outlook.com


*s/ Dorman Walker*
Of Counsel

9825025.1