IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| TRAVIS S. THOMAS, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:21-cv-192-RAH-SMD |
| ) | [WO] |
| AUBURN UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Travis S. Thomas, Sr. is a former athletic academic advisor at Auburn University (Auburn). He was terminated from his employment in the Spring of 2021. Thomas now sues Auburn, claiming race discrimination, retaliation, and hostile work environment harassment. Before the Court is Auburn's Motion (Motion) to Dismiss Thomas's Second Amended Complaint (Complaint). (Doc. 32.) Thomas has filed a response (Doc. 34) and Auburn a reply (Doc. 35), making the Motion ripe for resolution. For the following reasons, the Court concludes that the Motion is due to be GRANTED in part and DENIED in part.

## I.   BACKGROUND

**a. Thomas's Employment**

Thomas is a black male who was hired by Auburn in May 2017 as an academic counselor. (Doc. 28-3 at 2.) He was promoted in September 2018 to the position of

1

director of academic support services, where his duties included the supervision of football and volleyball academic staff, serving as the point of contact for student academic eligibility, counseling student athletes, and serving as a liaison between academic staff and the coaching staff. (*Id.*)

Because of his position as director of academic support services, Thomas served on an academic leadership team that also included three white females—Kathryn Flynn, Courtney Gage, and Cathie Helmbold. Thomas reported to Gage, and Gage and Helmbold reported to Flynn. (*Id.* at 4.)

Thomas alleges that, in July 2019, his work environment changed and became increasingly hostile, primarily at the hands of Flynn, Gage and Helmbold. Among other things, Thomas was subjected to increased professional scrutiny, disparagement, and ridicule from these three women in front of other staff members—none of which was ever directed at white employees. For example, at one of the weekly academic football meetings, Flynn "berated" Thomas in front of staff, stating that "the grades for football are the worst they've ever been" and criticized Thomas as "lazy, sloppy, and last minute." (*Id.* at 8.) Then, at several meetings Flynn announced that Thomas needed to work on his supervisory skills, that Thomas was not part of the leadership team, and that football staff should not speak with Thomas. (*Id.* at 8, 10.) Also, Thomas observed that Flynn, Gage and Helmbold began to intentionally exclude Thomas from the meetings of the academic

leadership team. (*Id.* at 21.) On at least one occasion, a white academic counselor told Thomas, "It's always double standards the way they treat you," referring to Thomas's co-employees. (*Id.* at 9–10.)

Thomas claims this discriminatorily hostile environment was not unique to him as other black employees felt the same. Because of the treatment toward black employees, Thomas claims there was frequent employee turnover, pointing to two black employees who were pressured to leave the athletics department. According to Thomas, white employees seemed to fare better than their black counterparts because hurtful and disparaging comments were hurled at black employees but not white employees. (*Id.* at 6–7.)

Thomas complained about his poor treatment sometime in 2019. On several occasions, Thomas spoke to senior associate Monique Holland, assistant athletic director Karla Gacasan, and human resources representative Takisha Brown about the way he was being treated. (*Id.* at 25.) Nothing ever improved. (*Id.*)

Fed up, in December 2019, Thomas approached Flynn to discuss the structure of the academic leadership team, his role on the team, and why Thomas was required to report to each of his co-team members. (*Id.* at 32.) According to Thomas, that discussion did not prove fruitful, as Flynn stripped Thomas of his supervisory responsibilities and reassigned those duties to Thomas's immediate supervisor, Gage, shortly thereafter. (*Id.*)

3

Thomas retained legal counsel, and on June 9, 2020, filed a charge of race discrimination with the Equal Employment Opportunity Commission (EEOC). (*Id.* at 9.) The following day, Thomas's attorney emailed a letter to Auburn Athletic Director Allen Greene and Maran White, an attorney with Auburn's Office of the General Counsel, about Thomas's discriminatory treatment and his EEOC charge. (*Id.* at 12.)

This effort to address the discriminatory attitude toward him was not fruitful either because, according to Thomas, approximately three weeks after filing the EEOC charge, on June 30, 2020, Thomas received a poor performance review, thereby causing him to receive a lower raise, among other potential adverse effects. (*Id.* at 14.) Believing this performance review to be retaliatory, Thomas then supplemented his EEOC charge with an allegation of retaliation. (*Id.*)

### b. Grade Changing Scandal and Termination

In December 2019, a grade changing scandal developed within the Auburn athletic department. A football player was failing a class and needed a passing grade in order to play in an upcoming bowl game. According to Thomas, Auburn officials wanted the player's professor to switch the player's grade from failing to passing, but the professor refused to do so. (Doc. 28 at 15.)

Concerned about the pressure being applied to the professor to make the grade change, in January 2020, Thomas brought this matter to the attention of the academic

4

leadership team including Flynn, Gage, and Helmbold; the Auburn compliance office; the faculty athletic representative; and the registrar's office. (*Id*. at 16.) That concern apparently fell upon deaf ears because during a certification meeting several weeks later, Thomas was told that the player's "grade got changed." (*Id*. at 17.)

A year later, however, Auburn officials turned the issue against Thomas. During a meeting on January 28, 2021, and contrary to what Thomas actually had done a year earlier, Auburn's compliance officer told Thomas that he should have reported the grade changing incident because not doing so was an NCAA infraction. (*Id.* at 16.)

A month later, on March 1, 2021, Auburn fired Thomas. (Doc. 34 at 18.) Thomas alleges that Flynn, Gage, and Helmbold all knew about the grade changing scandal and failed to report it to compliance officials, but unlike him, they were not threatened or fired. (*Id*. at 9–10.)

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure tests the sufficiency of a complaint against the legal standard articulated by Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  A district court accepts a plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69-73 (1984), and construes them "in

the light most favorable to the plaintiff," *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).

"A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations." *Id*. at 570. Instead, it must contain "only enough facts to state a claim to relief that is plausible on its face." *Id*. Still, the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555. A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.  DISCUSSION

**A. Race Discrimination (Count One)**

In Count One, Thomas claims Auburn, and in particular the three white female members of the leadership team, discriminated against him based on race in a variety of ways, including his exclusion from meetings of the leadership team of which he was a member, the removal of his supervisory duties, and ultimately, his March 1, 2021 termination.

In response, Auburn moves to dismiss the termination aspect of this claim only[1] (Doc. 32 at 2), arguing that, under the *McDonnell Douglas* burden shifting framework, Thomas cannot show that he was treated less favorably than a similarly situated individual outside his protected class (*Id.* at 3). That is, Auburn contends that Flynn, Gage and Helmbold are not proper comparators under *McDonnell Douglas*.

Auburn's motion to dismiss this claim is due to be denied, primarily because its stated basis is premature. An attack on Thomas's ability to meet his *McDonnell Douglas* burden, while appropriate at the summary judgment stage, is not at the motion to dismiss stage. Notably both the Supreme Court and the Eleventh Circuit have expressly refused to treat the evidentiary standard of *McDonnell Douglas* as a pleading standard that must be met at inception. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) ("[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination...to survive [a] motion to dismiss."); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270–71 (11th Cir. 2004) ("McDonnell Douglas [is] an *evidentiary* rather than a *pleading* standard . . . pleading a McDonnell Douglas prima facie case [is] not necessary to survive a motion to dismiss"); *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1246 (11th Cir. 2015); *Powers v.*

---

[1] Count One is brought under Title VII and Section 1981, which the Court examines in tandem because they have the same requirements of proof and use the same analytical framework. *See Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1256–57 (11th Cir. 2012).

*Secretary, U.S. Homeland Security*, 846 F. App'x 754, 758 (11th Cir. 2021). And further, even if Thomas failed to identify a proper comparator, this does not necessarily doom his claim as there are other methods by which Thomas could make out a case of race discrimination.[2] *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1327–28 (11th Cir. 2011) (explaining that a "plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case").

In short, while Thomas ultimately may not meet his burden under *McDonnell Douglas*, that determination is better made at the dispositive motion stage. Outside of this prematurely asserted issue, Thomas has sufficiently pleaded his claim of race discrimination and therefore Auburn's motion to dismiss this count is due to be denied.

### B. Racially Hostile Work Environment (Count Two)

Count Two is a claim for a racially hostile work environment. Auburn seeks dismissal of this claim, arguing that the factual allegations, even when assumed true, do not state a plausible claim to relief for race-based harassment. (*See* Doc. 32 at 9.) The Court agrees.

---

[2] Even if Thomas was required to point to a comparator in his Complaint, the Complaint does reference Flynn, Gage and Helmbold as comparators. While these individuals ultimately may not survive scrutiny under *McDonell Douglas* at the summary judgment stage, at the motion to dismiss stage, Thomas's comparator pleading is sufficient.

To plead a hostile work environment claim, Thomas is "required to allege that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability." *Edwards v. Prime, Inc*., 602 F.3d 1276, 1300 (11th Cir. 2010) (citing *Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009)).

Auburn argues for dismissal, claiming Thomas cannot establish the fourth element of his claim—that the alleged harassment was sufficiently severe or pervasive to alter the terms and conditions of employment. (Doc. 32 at 9.) This is so, Auburn argues, because "Thomas's harassment allegations . . . have little or no connection to race." (*Id*. at 12.) And therefore, "because [the alleged harassment has] nothing to do with race, [it] is not 'severe' for purposes of a racial harassment analysis." (*Id*.)

As a threshold matter, Auburn's argument is ambiguous in part. To the extent Auburn alleges that the harassment has "no connection to race," Auburn is making a causation argument, not just a severity argument as its brief indicates. Auburn's argument implies that *only* facially or explicitly racist harassment (like using racial epithets) can be sufficiently severe to establish a racially motivated hostile work

9

environment claim. However, the inquiry is not that absolute. *Ambus v. AutoZoners, LLC,* 71 F. Supp. 3d 1280, 1300 (M.D. Ala. 2014) ("Although words not directly related to race *may sometimes* constitute racial harassment, there must be a surrounding context in which it is clear that a comment is 'intended as a racial insult.'") (citing *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012)). Hostile work environment claims do not require that harassment be explicitly or facially racist to qualify as sufficiently severe harassment; rather, the harassment must be both because of race and sufficiently severe or pervasive, and facially neutral harassment can be both in certain, although limited, contexts.

Clarifications aside, Auburn's briefing indicates that it is arguing both that Thomas has failed to plausibly allege (1) that the alleged harassment was because of his race and (2) that the alleged harassment—even if it was because of his race—was not sufficiently severe or pervasive to state a hostile work environment claim. (Doc. 32 at 7–17.)

Even assuming that Thomas was targeted because he is black, the Court nonetheless concludes that Thomas has failed to plead sufficient facts plausibly showing that the alleged harassment was sufficiently severe or pervasive to state a hostile work environment claim.

When evaluating the objective severity of the alleged hostile work environment, a court must consider "(1) the frequency of the conduct; (2) the

severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Corbett v. Beseler,* 635 F. App'x 809, 816 (11th Cir. 2015) (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc)).

Of significance to this inquiry, it must be noted that "Title VII is not a general civility code; 'ordinary tribulations of the workplace, such as sporadic use of abusive language, [race-related] jokes, and occasional teasing' cannot form the basis of a claim for actionable harassment or hostile work environment." *Corbett*, 635 F. App'x at 816 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation and internal quotation marks omitted)). And Title VII "is not a shield against harsh treatment in the workplace"; "[p]ersonal animosity is not the equivalent of [race] discrimination." *Id*. (quoting *Succar v. Dade Cnty. Sch. Bd*., 229 F.3d 1343, 1345 (11th Cir. 2000) (citation and internal quotation marks omitted)).

Thomas avers that, over the course of 18 months, he was treated poorly (disparaged, criticized, excluded, berated, etc.) by his white co-leadership team members, one of whom was his supervisor. (Doc. 28 at 13–15 (identifying each instance of alleged harassment).) Thomas also alleges that (1) he had to report to Gage where others did not, (2) he was excluded from team meetings, (3) he was publicly criticized and called "lazy, sloppy, and last minute" by Flynn and told that

he needed to "work on [his] supervisory skills," (4) he had several of his supervisory duties stripped by Flynn and given to Gage, and (5) he was "condemned" for being too friendly with African-American student athletes. (*Id.*)

While these acts and the others asserted in the Complaint, if true, are certainly rude and unprofessional, they do not rise to the level of hostility protected by Title VII. The Eleventh Circuit, when analyzing the four hostility factors, has repeatedly found much more abhorrent conduct to nonetheless still be insufficient to state a hostile work-environment claim. *See Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1254 (11th Cir. 2014) (finding that a reasonable jury could not find a workplace objectively hostile where a black employee regularly saw the confederate flag, daily saw racist graffiti in the bathroom, heard people say the n-word a "few times over several years," and was informed that a noose had been put in the workplace bathroom); *Barrow v. Georgia Pac. Corp.,* 144 F. App'x 54, 57 (11th Cir. 2005) (finding conduct insufficiently severe where a superintendent would regularly call a black employee "boy," called him a "n****r" three times in one year, told the employee three times that he was going to kick the employee's "black ass," and when the employee reported this conduct to his supervisor, the supervisor responded, "you is a n****r").

Additionally, when courts have dealt with similar workplace unpleasantness as here, they have found that the conduct was insufficiently severe or pervasive to

support a hostile work environment claim. *See, e.g., Malone v. U.S. Att'y Gen.,* 858 F. App'x 296, 301 (11th Cir. 2021) (finding conduct insufficiently severe where a plaintiff alleged that his boss "assigned him additional work, subjected him to discipline after he failed to file a required form after an inmate's death, and verbally abused him by 'nitpicking every task' he completed and 'harassing' him for filing an evaluation late."); *Elite Amenities, Inc. v. Julington Creek Plantation Cmty. Dev. Dist.,* 784 F. App'x 750, 753 (11th Cir. 2019) ("[The] conduct here was, at worst, unprofessional, and so no person could reasonably believe that the [employer] oversaw a hostile work environment. We hold that the board member's uninvited, unpleasant office visits; physical engagement with the employee's work papers; and harsh emails are nothing more than ordinary tribulations of the workplace."); *Hutchinson v. Auburn Univ.*, No. 3:18-CV-389-ALB, 2020 WL 1905968, at *4 (M.D. Ala. Apr. 17, 2020) (dismissing claim where the complaint alleged that a black employee's supervisor was more comfortable with white employees and treated plaintiff rudely compared to his treatment of white employees, told plaintiff he did not trust her, gave her disciplinary write-ups, removed some of her duties, scrutinized her work excessively, and protected white employees).

In short, Thomas's allegations do not plausibly support a claim that Gage, Helmbold, or Flynn's actions constituted sufficiently severe or pervasive harassment

based on race and therefore Thomas's hostile work environment claim (Count Two) is due to be dismissed.

### C. Retaliation (Count Three)

Count Three is a Title VII retaliation claim. Thomas alleges that he engaged in protected activity on June 9, 2020 when he filed an EEOC charge alleging race discrimination and then, within three weeks, he received a lowered performance score that led to a lower raise. This allegedly retaliatory event led Thomas to file a supplemental EEOC charge that also was met with retaliatory conduct, this time in the form of ostracization, exclusion from team meetings, exclusion from communications with coaching staff, being demeaned, being falsely accused as part of the grade changing scandal, and then ultimately being terminated on March 1, 2021.

Thomas's retaliation claim will proceed to the extent that Thomas alleges retaliation in the form of his lowered performance score and alleged demotion because Auburn does not move to dismiss it. (Doc. 32 at 18.) Thomas's retaliatory termination claim requires a deeper dive; however, it too will proceed.

Auburn moves to dismiss the termination aspect of this claim, arguing that Thomas failed to allege a causal connection between Thomas's EEOC charge filed in June 2020 and his subsequent termination over eight months later on March 1, 2021. Auburn also argues that causation is not satisfied because no allegation is

made that the individuals who made the termination decision knew that Thomas had filed the EEOC charge in June 2020, and that the EEOC charge was not temporally proximate to Thomas's termination.

To adequately plead a Title VII retaliatory termination claim, Thomas must plausibly allege that (1) he engaged in statutorily protected conduct, (2) he suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse action. *Bryant v. Jones,* 575 F.3d 1281, 1307-08 (11th Cir. 2009).

"To establish a causal connection, a plaintiff must show that the relevant decisionmaker was 'aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'" *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1271 (11th Cir. 2017) (quoting *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013)). Factual allegations demonstrating temporal proximity between the protected activity and the alleged adverse employment action can be sufficient to satisfy the causation element at the pleading stage. *See Dixon v. DTA Sec. Servs.*, No. 20-12040, 2021 WL 5320987, at *3 (11th Cir. 2021); *Olson v. Dex Imaging, Inc.*, 63 F. Supp. 3d 1353, 1362–63 (M.D. Fla. 2014).

Although Thomas "need not plead a prima facie case to survive dismissal," the allegations in his complaint "must be sufficient to 'raise a right to relief above

15

the speculative level." *McCullough v. Bd. of Regents of the Univ. Sys. of Georgia*, 623 F. App'x 980, 983 (11th Cir. 2015) (per curiam) (citations omitted).

Here, there is no dispute that Thomas engaged in protected activity—filing the EEOC charge—and that he suffered an adverse action—termination (*see* Doc. 32 at 18), but rather, the disputed ground is whether Thomas has properly alleged a causal connection between the two. Auburn contends that Thomas's complaint allegations fail to plausibly establish causation because (1) he does not allege that the individuals who decided to fire him knew about his protected activity, and (2) he does not allege a sufficiently close temporal proximity between his protected activity and subsequent termination. (*Id.* at 20.)

As to knowledge by the decisionmakers, Thomas has alleged that his attorney informed both Auburn's Athletic Director and an attorney in Auburn's Office of General Counsel about his EEOC Charge. (*Id.*) At the motion to dismiss stage, allegations that high-up officials in both Auburn's athletic and legal departments knew about Thomas's EEOC charges is sufficient to create the plausible inference that whoever made the decision to fire Thomas also knew about his EEOC charges; an inference that discovery may or may not later bear out. *See generally Brungart v. BellSouth Telecommunications, Inc.,* 231 F.3d 791, 799 (11th Cir. 2000) (discussing how circumstantial evidence may establish decisionmaker's knowledge, especially

in the absence of unrebutted evidence that the decisionmaker did not know about the protected activity).

As to temporal proximity, while "a substantial delay between the protected expression and the adverse action may be fatal to a retaliation claim," it is premature for this Court to dismiss Thomas's termination-based retaliation claim on temporal proximity alone without the parties having the benefit of discovery. Afterall, the lack of temporal proximity only defeats a retaliation claim in the absence of other evidence tending to show causation. *See Richie v. Mitchell*, No. 5:14-CV-2329-CLS, 2015 WL 3616076, at *6 (N.D. Ala. June 9, 2015) (denying motion to dismiss and finding that although the temporal proximity may be too tenuous to state a retaliation claim, "some other facts alleged by plaintiff . . . could also be considered as other evidence of retaliation"); *Jeter v. Montgomery Cty.*, 480 F. Supp. 2d 1293, 1301 (M.D. Ala. 2007) (rejecting defendant's argument that the time period between the protected activity and adverse employment actions was too great to state a retaliation claim, recognizing that "[w]hile that may be the appropriate analysis at the summary-judgment stage, the court cannot say, at the Rule 12(b)(6) stage, that no set of facts can be proven consistent with a causal link necessary to sustain [plaintiff's] retaliation claim").

And here, Thomas has alleged facts that could be considered other evidence of retaliation such as the negative evaluation that almost immediately followed the

filing of his EEOC charge, the removal of Thomas's supervisory responsibilities and duties after filing the charge (Doc. 28 at 10), the continued rude behavior and antagonism by the leadership team, and Flynn's directive that nobody on the football staff should speak to Thomas. *See Ward v. United Parcel Serv.,* 580 F. App'x 735, 739 (11th Cir. 2014) (holding that evidence of a "pattern of antagonism" following protected activity may give rise to the inference of causation *even* in the absence of temporal proximity). The continuity of these events, assuming them to be true as the Court must, could make a sufficient causal connection to support the claim that Thomas ultimately was terminated in retaliation for filing the EEOC charge.

Therefore, Auburn's motion to dismiss Thomas's retaliation claim (Count Three) is due to be DENIED.

## IV. CONCLUSION

Defendant Auburn University's Motion to Dismiss the Second Amended Complaint (Doc. 32) is GRANTED in part and DENIED in part. Accordingly, it is hereby ORDERED as follows:

1. The Motion to Dismiss the Second Amended Complaint (Doc. 32) is GRANTED as to Count Two (Hostile Work Environment) and therefore Count Two is dismissed; and

2. The Motion to Dismiss the Second Amended Complaint (Doc. 32) is DENIED as to Counts One (Discrimination) and Three (Retaliation). Accordingly, those two claims will proceed forward.

DONE, on this the 11th day of February 2022.

                                            /s/ R. Austin Huffaker, Jr.
                                      R. AUSTIN HUFFAKER, JR.
                                      UNITED STATES DISTRICT JUDGE