# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 09, 2024

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  23-13935-HH
Case Style:  Travis Thomas, Sr. v. Auburn University
District Court Docket No:  3:21-cv-00192-RAH-SMD

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing is timely only if received in the clerk's office within the time specified in the rules. **A petition for rehearing must include a Certificate of Interested Persons and a copy of the opinion sought to be reheard.** See 11th Cir. R. 35-5(k) and 40-1.

Costs
Costs are taxed against Appellant(s) / Petitioner(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion

[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 23-13935

Non-Argument Calendar

————————————————

TRAVIS S. THOMAS, SR.,

Plaintiff-Appellant,

*versus*

AUBURN UNIVERSITY,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 3:21-cv-00192-RAH-SMD

————————————————

2                              Opinion of the Court                              23-13935

Before Newsom, Grant, and Anderson, Circuit Judges.

PER CURIAM:

Travis Thomas, Sr., worked in Auburn University's Athletics Department, where he oversaw academic support services for the football team. In January 2020, Thomas learned that an Auburn football player's grade had been changed to a passing grade, restoring the student-athlete's eligibility for Auburn's January 1 bowl game. Thomas worried that the change was improper, but he waited over a year to report his suspicions. NCAA bylaws and Auburn policy require prompt reporting of potential NCAA bylaws violations. So when Thomas finally reported the suspected violation, the University terminated him for his delay.

Thomas responded by bringing Title VII claims for race discrimination and retaliation against the University. The district court granted summary judgment in favor of the University, and Thomas now appeals. Because Thomas fails to present evidence sufficient to support his claims, we affirm.

## I.

Thomas began working for the Auburn Athletics Department in May 2017. He worked as an academic counselor in the Student-Athlete Support Services division. Thomas initially impressed his supervisors and was promoted to a new role created specifically for him: Director of Academic Support Services. In this role, he continued to serve as an academic counselor and

supervised student-athlete academic support services for the football team. Thomas reported to Courtney Gage, an Associate Athletics Director for Student-Athlete Support Services. Gage and Cathie Helmbold, another Associate Athletics Director, reported to Kathryn Flynn, the Senior Associate Athletics Director for Student-Athlete Support Services. Thomas, Gage, Helmbold, and Flynn met together frequently to discuss football-team-related issues.

Tragedy struck the Thomas family in 2019. Thomas's wife was diagnosed with cancer and passed away. Understandably, Thomas's work started to decline. Members of Student-Athlete Support Services—including Gage, Helmbold, and Flynn—took turns taking Thomas meals and offering support. Gage, Helmbold, and Flynn also paused their regular meetings with Thomas to lighten his load. Thomas's performance, however, did not improve. Various issues arose with student-athletes under Thomas's supervision, and more than the usual number of student-athletes on the football team were at high academic risk. Flynn removed some of Thomas's supervisory responsibilities to allow Thomas to focus on his "core responsibilities." While Flynn asserts that this act was taken to help Thomas, Thomas saw it as racial discrimination.

In June 2020, Gage prepared Thomas's annual performance evaluation. Due to Thomas's decline in performance, Thomas's work was rated as "Marginal." This was in contrast to the "Exceeds Expectations" rating he received the previous year. Thomas did

not experience a change in salary, compensation, or benefits because of the evaluation. Sometime in June 2020, Thomas met with Takisha Brown—an HR representative—to complain about his treatment at work. Thomas had a similar conversation with Karla Gacasan, the Assistant Athletics Director for Human Resources, a few days later. On June 9, 2020, Thomas filed an EEOC charge against the University, asserting race discrimination, sex discrimination, and hostile work environment claims. After receiving his performance evaluation on June 30, 2020, Thomas filed another EEOC charge, this time for retaliation. Gage, Helmbold, and Flynn did not learn about the charges until July 9, 2020.

The events leading to Thomas's termination began in December 2019. One of the football players under his supervision received a failing grade in a class after turning in a final project late. Due to this failure, the student-athlete was ineligible to play in the team's bowl game on January 1, 2020. After learning of the student-athlete's extenuating circumstances, however, the professor decided to—in accordance with University policy— change the failing grade to a passing grade. With his eligibility restored, the student-athlete played in the bowl game.

On January 7, 2020, various leaders from the University met to review and certify student-athletes' eligibility. Because Thomas was not aware of the grade change, he stated at the meeting that the student-athlete had been ineligible to play in the bowl game. Thomas had not been forwarded the grade change notification

email.  Helmbold normally forwarded emails like this to Thomas, but failed to do so on this occasion, citing the fact that she was on Christmas break at the time she received the notification as the reason.  Others at the meeting informed Thomas that the grade had been changed, and the athlete's eligibility restored.  Thomas, however, became concerned that the grade change was improper, although he did not share this concern at the meeting.

Over one year later, in January 2021, Thomas reported his concern about the grade change to the University.  Rich McGlynn, Auburn's then-Executive Athletics Director for Compliance, met with Thomas and began an investigation.  McGlynn determined that, in waiting more than a year to report a potential NCAA violation, Thomas violated NCAA bylaws and University policy that require prompt reporting of potential violations.  McGlynn recommended termination, and Gacasan concurred.  On March 1, 2021, Thomas was terminated pursuant to the compliance violation.

Thomas subsequently brought Title VII race discrimination and wrongful retaliation claims against the University.  Both parties sought summary judgment, and the district court granted the University's motion for summary judgment as to both claims.  Thomas now appeals.

**II.**

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to Thomas and drawing all inferences in his favor.  *Pizarro v. Home*

6                        Opinion of the Court                    23-13935

*Depot, Inc.*, 111 F.4th 1165, 1172 (11th Cir. 2024).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact" such that the University is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

### III.

Thomas's first claim is for Title VII race discrimination.  The Supreme Court in *McDonnell Douglas* set out a three-step burden shifting framework designed to draw out the necessary evidence in employment discrimination cases.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  At step one, the plaintiff establishes a "prima facie" case of discrimination when he shows that he (1) is a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for his job, and (4) his employer treated differently one or more similarly situated persons outside the protected class.  *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc).

The last requirement is met when the plaintiff presents "evidence of a comparator—someone who is similarly situated in all material respects."  *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022) (quotation omitted).  Comparators ordinarily "will have engaged in the same basic conduct (or misconduct) as the plaintiff," "will have been subject to the same employment policy," "will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff," and "will share the plaintiff's employment or disciplinary history."  *Lewis*, 918 F.3d at 1227–28.

23-13935                 Opinion of the Court                    7

If the plaintiff makes a prima facie showing, he is entitled to "a rebuttable presumption of intentional discrimination." *Tynes v. Florida Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023). "The defendant then rebuts that presumption (if it can) by offering evidence of a valid, non-discriminatory justification for the adverse employment action. Once that justification is offered, the presumption of discrimination falls away and the plaintiff tries to show not only that the employer's justification was pretextual, but that the real reason for the employment action was discrimination." *Id.* (citation omitted).

Thomas cannot establish a prima facie case of race discrimination because he fails to present a sufficient comparator. His only attempt to establish a comparator is to point to Flynn, Gage, and Helmbold—his three white, female colleagues. Because Flynn, Gage, Helmbold, and Thomas made up the Student-Athlete Support Services "Leadership Team" and met regularly, Thomas argues that they "had the same supervisor," "shared a similar employment or disciplinary history," and "engaged in the same basic conduct in leading the SASS Unit." But none of these assertions are supported in the record. *First*, Flynn, Gage, and Helmbold did not share the same supervisor as Thomas. Thomas *reported to* Gage, and Gage and Helmbold reported to Flynn.

*Second*, Thomas did not have the same or similar employment history as Flynn, Gage, and Helmbold. While Thomas was a "Director," the Director of Academic Support Services, he was not an "Athletics Director," a position the others

8                    Opinion of the Court                    23-13935

held.  Those familiar with sports administration understand the difference.  As athletics directors, Flynn, Gage, and Helmbold had responsibilities that exceeded Thomas's.  Though Thomas argues that they were all part of the same "Leadership Team," the fact that they had regular meetings together does not make them similarly situated.  Leaders routinely meet with subordinates.  And while Thomas was hired to an entry-level position and worked at the University for four years before his termination, Flynn, Gage, and Helmbold had much more experience.  At the time of Thomas's termination, Flynn had worked at Auburn for 29 years, Helmbold for 19, and Gage for 13.

*Third*, Thomas does not show that Flynn, Gage, and Helmbold engaged in the same misconduct as he did.  He has not shown that they believed the grade change was improper and failed to timely report a potential violation.  Nor has he shown that they engaged in other similar conduct—such as failing to properly supervise student-athletes under their supervision—that led to Thomas's loss of supervisory responsibilities and "marginal" performance evaluation.

Because Thomas does not identify appropriate comparators, he cannot satisfy the first step of the *McDonnell Douglas* evidentiary framework.  We have been clear, however, that a plaintiff who fails to establish a prima facie case (or otherwise travel under the *McDonnell Douglas* rubric) can still survive summary judgment if he presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the

23-13935                 Opinion of the Court                    9

decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (quotation omitted); *see also Tynes*, 88 F.4th at 946. A "convincing mosaic" of circumstantial evidence is "simply enough evidence for a reasonable factfinder to infer intentional discrimination in an employment action—the ultimate inquiry in a discrimination lawsuit." *Tynes*, 88 F.4th at 946. "If the plaintiff presents enough circumstantial evidence to raise a reasonable inference of intentional discrimination, her claim will survive summary judgment." *Id.* at 947 (quotation omitted).

Thomas does not make this showing. Most notably, Thomas fails to show any evidence of discrimination in his actual termination. Thomas argues that the University's stated reason for termination—his failure to report a potential NCAA violation—is pretext. He seems to claim that by questioning the student-athlete's eligibility at the certification meeting, he reported the violation. He also argues that he was told "not to further discuss" the grade change by others at the meeting. This information, however, does little to bolster his pretext argument. It is undisputed that Thomas did not question the propriety of the grade change at the certification meeting; he merely questioned whether the student athlete was eligible because he was not aware that the grade had in fact been changed. And even if he was told "not to further discuss" the grade change by those present at the meeting, this would not alleviate his duty to report a potential violation. That he was able to report the violation when he did shows that he could have reported the violation sooner.

Thomas similarly fails to display evidence of racial discrimination in other actions that took place prior to his termination. Although he alleges that he was disparaged, excluded from leadership team meetings, downgraded from his supervisory role, and evaluated improperly, he does not connect this alleged mistreatment to his race. Ultimately, Thomas's claims are conclusory, and he fails to tie any of them to evidence of racial animus. We see no error in the district court's grant of summary judgment on the race discrimination claim.

## IV.

Thomas's second Title VII claim, for retaliation, fares no better than the first. To make out a prima facie retaliation claim under Title VII, a plaintiff must show "(1) that she engaged in statutorily protected activity, (2) that she suffered an adverse action, and (3) that the adverse action was causally related to the protected activity." *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (en banc) (quotation omitted). An adverse action is one that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). To satisfy the causation requirement, the plaintiff must establish that "her protected activity was a but-for cause of the alleged adverse action by the employer." *Gogel*, 967 F.3d at 1135 (quotation omitted). "If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).

Thomas engaged in statutorily protected activity when he brought EEOC charges against the University. And we assume, as the district court did, that Thomas's complaints to HR also constituted protected activity. Thomas brought his EEOC charges in June and July of 2020, and any HR complaints regarding race discrimination were made in mid-2020 at the latest. Thomas does not connect any of these actions to his termination in March 2021, over seven months later.

Rather than meaningfully argue that his termination was causally related to his protected activity, Thomas argues that the district court erred in determining that the only adverse employment action was his termination. Thomas contends that the following also constitute materially adverse actions: "his continual exclusion from the SASS Leadership Team, the continued beratement and humiliation suffered in front of other staff and employees, the removal of his many duties and responsibilities as Director of Academic Support Services, the unsupported low annual evaluation, the refusal to permit him to communicate with coaches and staff, [and] the creation of a false accusation that he 'failed to report.'" What Thomas does not do, however, is show how any of these actions were taken because of his EEOC charges and HR complaints. Simply stating that "these many adverse actions continued and increased from the time Thomas made his first complaint" to human resources is not enough.

The University, on the other hand, points out that many of these alleged adverse actions, like pausing the leadership meetings or taking actions that Thomas says humiliated him "in front of other staff members" happened *before* Thomas brought EEOC charges. And for those that happened after either the HR complaints or EEOC charges, Thomas fails to show a causal connection. For this reason, his retaliation claim cannot survive.

⋆    ⋆    ⋆

We have sympathy for the personal loss faced by Thomas. But because he fails to present enough evidence of racial discrimination and retaliation to survive summary judgment, we **AFFIRM**.